UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

XEROX CORPORATION,

              Plaintiff,

    v.

LANTRONIX, INC.,

              Defendant.

_____

**DECISION AND ORDER**

6:17-CV-06845 EAW

## **INTRODUCTION**

Plaintiff Xerox Corporation ("Plaintiff") commenced this action on December 8, 2017, seeking damages for defendant Lantronix, Inc.'s ("Defendant") alleged breach of its obligations under an indemnification clause to the parties' "Multinational Master Purchase Agreement for Design, Manufacture, and Supply of Wireless Print Adapter" (the "Agreement"). (Dkt. 1). Plaintiff also seeks a declaratory judgment that the Agreement requires Defendant to defend and indemnify Plaintiff in a separate lawsuit filed in the United States District Court for the Eastern District of Texas. (*Id.*). On January 29, 2018, Defendant answered Plaintiff's Complaint and asserted three counterclaims. (Dkt. 8).

On February 19, 2018, Plaintiff filed a motion to dismiss the counterclaims on the ground that Defendant failed to satisfy the prelitigation requirements set forth in the Agreement's "Dispute Resolution" clause. (Dkt. 12). On March 9, 2018, Defendant opposed Plaintiff's motion, and, alternatively, cross-moved to stay the resolution of the motion to dismiss. (Dkt. 18). On June 5, 2018, Defendant filed a motion to amend/correct

its counterclaims to allege that it had since engaged in good faith negotiations with Plaintiff in full satisfaction of the Dispute Resolution clause. (Dkt. 25; *see* Dkt. 27-1).

On June 27, 2018, the Court heard argument on each motion. After considering the arguments presented by both sides, the Court ruled from the bench that it granted Defendant's motion to amend/correct its counterclaims, denied Plaintiff's motion to dismiss, and denied as moot Defendant's cross-motion to stay the resolution of the motion to dismiss. (*See* Dkt. 30). The Court informed the parties that a decision explaining the basis for its determinations would be issued in due course. This Decision and Order is intended to memorialize the Court's analysis in written form.

## BACKGROUND[1]

Plaintiff alleges that it and Defendant are parties to the Agreement. (Dkt. 1 at ¶ 8; *see* Dkt. 12-3 (the Agreement)). The Agreement requires Defendant to provide wireless print adapters for Plaintiff to use within its "multifunction printers." (Dkt. 1 at ¶ 9). Plaintiff claims that the Agreement requires Defendant to "indemnify and hold harmless [Plaintiff] . . . from all Claims whatsoever resulting from any alleged or actual infringement of any third party's [intellectual property] Rights" that may arise from the wireless print adapters. (*Id.* at ¶ 10). The Agreement also requires Defendant to "intervene in or defend any such proceedings" for the violation of a third party's intellectual property rights at Plaintiff's "option and [Defendant]'s expense . . . upon notice by [Plaintiff] to [Defendant]." (*Id.*).

---

[1] The following facts are taken from Plaintiff's Complaint. (Dkt. 1).

On March 9, 2017, several non-party individuals filed a complaint against Plaintiff in the United States District Court for the Eastern District of Texas (the "Texas Action"). (*Id.* at ¶ 12). The Texas Action alleged that Plaintiff infringed upon certain registered federal patents, and that these patent violations involved the wireless print adapters supplied by Defendant under the Agreement. (*Id.* at ¶¶ 13-14).

By letter dated March 29, 2017, Plaintiff demanded that Defendant "fulfill its defense and indemnification obligations under the Agreement." (*Id.* at ¶ 15). Defendant refused to do so, and, as a result, Plaintiff incurred attorneys' fees and litigation costs in defending the Texas Action. (*Id.* at ¶¶ 16-17).

## PROCEDURAL HISTORY

On December 8, 2017, Plaintiff filed this action against Defendant seeking damages for the alleged breach of the Agreement's indemnification clause and a declaratory judgment ordering that Defendant defend and indemnify Plaintiff in the Texas Action. (*Id.* at ¶¶ 1-2). On January 29, 2018, Defendant answered the Complaint and filed three counterclaims against Plaintiff. (Dkt. 8). Defendant's first counterclaim seeks damages from Plaintiff based upon its alleged violation of the Agreement by failing to purchase 890 wireless print adapters. (*Id.* at 4-5). Defendant's second counterclaim alleges that Plaintiff breached the jurisdictional and venue provisions of the Agreement by initially filing a complaint requesting indemnification in the United States District Court for the Eastern District of Texas instead of the United States District Court for the Western District of New York, or "a New York state court sitting in Monroe County, New York." (*Id.* at 6). That prior complaint was "voluntarily dismissed" before Plaintiff filed the instant action in this

District. (*Id.*). The third counterclaim seeks costs and attorneys' fees incurred in defending the instant action. (*Id.* at 7).

On February 19, 2018, Plaintiff filed a motion to dismiss Defendant's counterclaims on the ground that Defendant failed to comply with the Agreement's Dispute Resolution clause. (Dkt. 12-1). That clause provides that Plaintiff and Defendant would "attempt in good faith to resolve any dispute arising out of or relating to [the] Agreement promptly by negotiation between the parties at the appropriate level of management." (Dkt. 12-3 at 9). If those negotiations failed, "then either party [would] provide written notice to the respective authorized representatives of the other party, which [would] be at the next level of management not directly involved in the dispute." (*Id.*). If the dispute was not resolved within thirty days of the receipt of that notice, "then the dispute [would] be escalated to designated senior business executives of each party, who [would] have an additional [thirty] days to resolve the dispute." (*Id.*). The parties could agree to extensions for these time periods, and nothing in the clause prevented "either party from applying for any interim, interlocutory or preliminary injunctive or declaratory relief; from bringing any claim for contribution or indemnity; or from exercising any rights it has, if any, to cancel [the] Agreement." (*Id.*). However, if the dispute remained unresolved "within the timeframes set out above, then either party may bring a legal action or proceeding against any other party arising out of or relating to [the] Agreement" in the Western District of New York, or any New York State court sitting in Monroe County. (*Id.*).

On March 9, 2018, Defendant filed its response in opposition to Plaintiff's motion to dismiss, and, alternatively, cross-moved for a stay of Plaintiff's motion. (Dkt. 18).

Defendant opposed Plaintiff's motion on three grounds: (1) the Dispute Resolution clause did not apply to compulsory counterclaims; (2) the Dispute Resolution clause did not set forth a condition precedent to asserting a counterclaim in a "legal action or proceeding" that had already been commenced; and (3) the Dispute Resolution clause was unenforceable because it was indefinite and ambiguous. (*Id.* at 4; *see* Dkt. 18-5 at 3-9). In the alternative, Defendant cross-moved to stay the resolution of Plaintiff's motion to dismiss in order to permit Defendant time to comply with the provisions of the Dispute Resolution clause and to seek leave to replead the counterclaims once those requirements had been satisfied. (Dkt. 18 at 10-13; *see* Dkt. 18-5 at 10-12).

On March 29, 2018, Plaintiff filed a memorandum of law in support of its motion to dismiss and in opposition to Defendant's cross-motion for a stay. (Dkt. 21). On June 5, 2018, Defendant filed a motion to amend/correct its counterclaims. (Dkt. 25). Without conceding any of the arguments previously asserted in its opposition to Plaintiff's motion (*id.* at 5 n.1), Defendant argued that it had made several good faith efforts to satisfy the requirements of the Dispute Resolution clause and requested leave to amend its counterclaims to allege that it had done so (*id.* at 5-12). Plaintiff opposed Defendant's motion for leave to amend. (Dkt. 29). Specifically, Plaintiff argued that the Court should deny Defendant's motion for leave to amend/correct because Defendant failed to demonstrate its compliance with the Dispute Resolution clause. (*Id.* at 2-7).

On June 27, 2018, the Court heard oral argument, after which the Court granted Defendant's motion to amend/correct its counterclaims, denied Plaintiff's motion to dismiss, and denied as moot Defendant's cross-motion to stay the resolution of the motion

to dismiss. (Dkt. 30). The following analysis is intended to explain the rationale underlying the Court's determinations.

**DISCUSSION**

I.    **Plaintiff's Motion to Dismiss is Denied Because the Dispute Resolution Clause Does Not Apply to Counterclaims**

A.    **Legal Standard for Rule 12(b)(6)**

"Federal Rule of Civil Procedure 12(b) applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Gerdau Ameristeel US Inc. v. Ameron Int'l Corp.*, No. 13 Civ. 07169 (LGS), 2014 WL 3639176, at *2 (S.D.N.Y. July 22, 2014); *see MTV Networks, a Div. of Viacom Int'l, Inc. v. Curry*, 867 F. Supp. 202, 203 (S.D.N.Y. 1994) ("The standards for dismissing claims under Rule 12(b)(6) are identical to the standards for dismissing counterclaims."). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## B.    The Dispute Resolution Clause Does Not Apply to Counterclaims Asserted in an Already-Commenced Action

Rule 3 of the Federal Rules of Civil Procedure provides that "[a] civil action is *commenced* by filing a complaint with the court." (emphasis added); *see* Black's Law Dictionary 344 (10th Ed. 2014) (defining a "complaint" as "[t]he initial pleading that *starts a civil action. . .*" (emphasis added)). In addition, Black's Law Dictionary defines the phrase, "bring an action," as "[t]o sue; institute legal proceedings." *Id.* at 231.

The Dispute Resolution clause provides, in pertinent part, as follows: "If the parties cannot resolve any dispute in the manner and within the timeframes set out above, then either party may *bring a legal action or proceeding* against any other party arising out of or relating to this Agreement. . . ." (Dkt. 12-3 at 9 (emphasis added)). Plaintiff contends

that the phrase to "bring a legal action or proceeding" encompasses the counterclaims asserted by Defendant in this action. (Dkt. 21 at 5-7). In other words, according to Plaintiff's logic, the Dispute Resolution clause barred Defendant from asserting counterclaims in response to the action already commenced by Plaintiff without first complying with the prerequisite procedures outlined therein.

The Court acknowledges that "[t]he word 'action,' without more, is arguably broad enough to encompass any type of judicial proceeding, including counterclaims." *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Pelella*, 350 F.3d 73, 81 (2d Cir. 2003). But the term "action" is modified in the Dispute Resolution clause by the word "bring." The Second Circuit has recognized:

> [A] defendant does not "institute" an action when he asserts a counterclaim. Rather, a plaintiff must commence the action by filing a complaint that names a defendant. This affords the defendant the ability to file a responsive pleading, namely the answer, in which he can include a claim for relief against the opposing party.

*Id.* at 82 (citations omitted); *accord Jonathan H. v. The Souderton Area Sch. Dist.*, 562 F.3d 527, 529-30 (3d Cir. 2009) ("[A]n action is 'brought' when a plaintiff files a complaint, which is the first step that invokes the judicial process. Unlike the proactive nature of a complaint, a counterclaim is reactive because it is filed only after the plaintiff has initiated the case by bringing a civil action." (citations omitted)); *Mister Softee, Inc. v. Amanollahi*, No. 2:14-CV-01687 (KM) (JBC), 2016 WL 5745105, at *17 n.29 (D.N.J. Sept. 30, 2016) ("A counterclaim does not commence an action."), *reconsideration denied*, No. CV 14-1687 (KM) (JBC), 2017 WL 1217131 (D.N.J. Mar. 30, 2017); *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 128 F. Supp. 3d 485, 486 (D.P.R.

2015) ("PRHTA essentially invites the Court to construe the commencement of a legal action . . . as including the filing of a counterclaim. The Court declines PRHTA's invitation. . . . TransCore did not commence an action when it filed a counterclaim because a counterclaim is not a complaint." (citations omitted)); *Guthrie v. Nw. Mut. Life Ins. Co.*, No. DKC 09-2342, 2010 WL 3260001, at *3 (D. Md. Aug. 18, 2010) ("Giles is not 'instituting or prosecuting any proceeding' by bringing her [counter]claim, but is instead adding a claim to an already existing proceeding."). Put simply, the act of *bringing* a legal action or proceeding necessarily refers to the commencement or initiation of a lawsuit— not asserting a counterclaim in response to a lawsuit that has already been commenced.

"If the contract is unambiguous, then under New York law this Court interprets its plain language as a matter of law." *Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14-CV-2275 (JGK), 2018 WL 4500852, at *3 (S.D.N.Y. Sept. 19, 2018); *see Presbyterian Healthcare Servs. v. Goldman Sachs & Co.*, No. 15-CV-6579 (AJN), 2017 WL 1048088, at *11 (S.D.N.Y. Mar. 17, 2017) ("Under New York law, 'the plain language' of the contract controls." (quoting *Karol v. Polsinello*, 127 A.D.3d 1401, 1403 (3d Dep't 2015))); *Citibank, N.A. v. Barclays Bank, PLC*, 28 F. Supp. 3d 174, 182 (S.D.N.Y. 2013) ("Courts must interpret the contract to 'effectuate its plain language.'" (quoting *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 68 (2d Cir. 2002))).

The Dispute Resolution clause sets certain preconditions before either party may "bring" a legal action or proceeding. (*See* Dkt. 12-3 at 9). As a mechanism to promote alternative dispute resolution and avoid the costs of litigation, it makes sense that the Agreement limits a party's ability to run into court before attempting to resolve the dispute

- 9 -

through non-litigation efforts. However, once a party has engaged in the act of "bringing" an action or proceeding, a party is free to defend against the lawsuit and assert any counterclaims—the Agreement's Dispute Resolution clause does not prevent a party being sued from asserting claims against the party who brought the proceeding.

Thus, the inclusion of the word "bring" is critical to the Court's analysis, since the act of bringing an action is defined as the institution of legal proceedings and represents the first step in commencing the judicial process. *See Pelella*, 350 F.3d at 82 ("A party institutes an action when he commences a judicial proceeding. A party commences a judicial proceeding when he takes the first step that invokes the judicial process."). Accordingly, by its plain language the Dispute Resolution clause applies only where a party "bring[s] a legal action or proceeding" by filing a complaint and not where a party merely asserts counterclaims in response to an already pending legal action. *See id.* ("An action is . . . instituted when a plaintiff files a complaint as that constitutes the first step invoking the judicial process. In sharp contrast, a defendant asserts a counterclaim in response to a plaintiff's institution of an action." (citations omitted)); Black's Law Dictionary 427 (10th ed. 2014) (defining a "counterclaim" as "[a] claim for relief asserted against an opposing party *after an original claim* has been made" (emphasis added)).

Therefore, pursuant to the Agreement's plain language, the dispute resolution process was only required before commencement of an action. Plaintiff took that step and commenced this action. As a result, Defendant was under no obligation to comply with the Dispute Resolution clause before asserting any of its counterclaims—irrespective of whether they are compulsory—and thus, Plaintiff's motion to dismiss is denied and

Defendant's cross-motion to stay the resolution of Plaintiff's motion to dismiss is denied as moot.

## II.     Defendant's Motion for Leave to Amend/Correct Its Counterclaims is Granted

Because the Court has concluded that Defendant was not required to exhaust the dispute resolution process prior to asserting its counterclaims, Defendant's motion to amend the counterclaims to allege compliance with the Dispute Resolution clause is arguably no longer necessary. Nonetheless, for the sake of completeness, and because an appellate court could potentially disagree with this Court's reading of the Dispute Resolution clause, the Court now turns to Defendant's motion for leave to amend its counterclaims.

### A.     Legal Standard for Rule 15(a)

Federal Rule of Civil Procedure 15 provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a "liberal standard," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), and "is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits," *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (quotation marks and citation omitted). Nevertheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

"A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* "With respect to the

Rule 15(a) factors, '[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile.'" *Lieb v. Korangy Publ'g, Inc.*, No. 15-CV-40 (AKT), 2016 WL 8711195, at *5 (E.D.N.Y. Sept. 30, 2016) (quoting *Cummings-Fowler v. Suffolk Cmty. Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012)).   In determining whether the proposed pleading "states a claim, [courts] consider the proposed amendment[s] . . . along with the remainder of the complaint, accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in [the pleader's] favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (quotation marks and citation omitted).   In other words, "the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).

### B.    Defendant's Timeline of Communications with Plaintiff

Defendant alleges that it has "made substantial good faith efforts to resolve the counterclaims informally in compliance with [the Dispute Resolution clause], to the extent such compliance is even necessary." (Dkt. 25 at ¶ 12).   In support of this position, Defendant has set forth a timeline describing various communications between its representatives and Plaintiff's representatives. (*Id.* at ¶ 11).   Defendant indicates that it initiated dispute resolution negotiations in October 2017, at which time Defendant's head of sales, Kevin Yoder ("Yoder"), emailed "a manager in the Xerox Global Purchases group," Chris Campbell ("Campbell"), regarding 480 wireless print adapters that

- 12 -

Defendant claims Plaintiff was contractually obligated to purchase from Defendant. (*Id.* at 5; *see* Dkt. 18-1 (email communications)). Campbell apparently denied that Plaintiff was contractually obligated to purchase those units. (Dkt. 25 at 5; *see* Dkt. 18-1 at 2).

In January 2018, Kurt Scheuerman ("Scheuerman"), Defendant's Vice President and General Counsel, contacted Michelle Waites ("Waites"), Plaintiff's Senior Patent Counsel in its Office of General Counsel, to discuss the costs incurred by Defendant in responding to Plaintiff's first indemnity lawsuit in the Eastern District of Texas, as well as the cost of the 480 wireless print adapters and associated raw materials allegedly owed by Plaintiff to Defendant. (Dkt. 25 at 6-7; *see* Dkt. 18-2 at 3 (email communications); Dkt. 18-3 (Scheuerman letter to Waites outlining Defendant's position on both issues)). On January 29, 2018, Waites sent a letter response to Scheuerman, stating that Plaintiff was not required to purchase the additional wireless print adapters, and disputing Defendant's explanation for why it need not indemnify or defend Plaintiff in the Texas Action. (Dkt. 25 at 7; *see* Dkt. 18-4 (Waites's letter to Scheuerman)).

On February 28, 2018, Scheuerman addressed a "written notice" to Waites, which set forth the history of the parties' discussions and indicated that he was unsure of who he should consider as Plaintiff's "authorized representative" for purposes of the second level of dispute resolution negotiations. (Dkt. 25 at 7). Scheuerman also stated that he was acting with the understanding that Waites was Plaintiff's "authorized representative," and noted that Jeff Benck ("Benck"), Defendant's CEO and President, was Defendant's "designated senior business executive" for purposes of any third-tier dispute resolution discussions. (*Id.* at 7-8).

- 13 -

Defendant did not receive any response to Scheuerman's February 28, 2018, letter. (*Id.* at 8). On March 30, 2018, Scheuerman sent another letter to Waites, explaining the situation and, again, requesting the name of Plaintiff's "designated senior business executive" for purposes of any escalated third-tier negotiations. (*Id.*). On April 4, 2018, Waites responded by email, indicating that neither she nor Scheuerman were authorized to engage in any dispute resolution processes under the Agreement because they were lawyers, and recommending that Yoder contact Campbell to initiate prelitigation negotiations. (*Id.* at 8-9). Waites failed to acknowledge that Yodell and Campbell had already communicated in October 2017, at which time Campbell denied Yoder's initial inquiry into Plaintiff's alleged obligation to purchase the 480 wireless print adapters. (*Id.* at 9; *see* Dkt. 18-1 at 2). Notably, Plaintiff has acknowledged that, "[a]t most, the October 2017 communication reflects the first of three steps in the dispute resolution provision." (Dkt. 21 at 12).

On April 16, 2018, Benck emailed Campbell, explaining that he was doing so with the understanding that Campbell was Plaintiff's "designated senior business executive" for purposes of the Dispute Resolution clause, because, in his view, Waites had identified him as such. (Dkt. 25 at 9). On April 18, 2018, Campbell emailed Benck, indicating both that he had received the April 16, 2018, email, and that Defendant's complaints had been taken under advisement. (*See id.* at 10; *see also* Dkt. 29-2 at 3 (email communications)). Finally, on May 14, 2018, Campbell sent another email to Benck, denying that Plaintiff owed Defendant anything, and explaining that he was not Plaintiff's "designated senior business executive." (Dkt. 25 at 10; Dkt. 29-2 at 2). Instead, Campbell indicated that Kurt Brasser

("Brasser") was Plaintiff's "authorized representative" for purposes of the second level of dispute resolution negotiations. (Dkt. 29-9 at 2). The papers before the Court do not indicate whether Defendant has ever contacted Brasser subsequent to Campbell's communication.

### C. Plaintiff Has Failed to Set Forth a Good Reason to Deny Defendant Leave to Amend

Plaintiff's opposition to Defendant's motion for leave to amend is not structured under the usual rubric used by courts to determine whether there is a "good reason" to deny leave to amend. *See generally McCarthy*, 482 F.3d at 200 (noting that courts may deny leave to amend due to "futility, bad faith, undue delay, or undue prejudice to the opposing party"). Instead, Plaintiff disputes Defendant's actual compliance with the requirements of the Dispute Resolution clause. (Dkt. 29 at 2-7). However, Plaintiff's challenge to the factual predicate underlying Defendant's proposed amended allegations is more appropriately asserted in the context of a dispositive motion, not a motion for leave to amend in response to a motion to dismiss. *See Levine v. Landy*, No. 1:11-CV-1038 (DNH/RFT), 2012 WL 13018979, at *7 (N.D.N.Y. Nov. 15, 2012) (stating that the counter-defendants "either misunderstood the Court's role in assessing the proposed amended counterclaims or obfuscated the motion to dismiss standard, pursuant to Rule 12(b)(6), with the standard for summary judgment, pursuant to Rule 56, by intimating that this Court should evaluate [proof], at this stage of the litigation").

The liberal standard required of a Rule 15(a) motion "is different where . . . the cross-motion [for leave to amend] is made in response to a Fed. R. Civ. P. 56 motion for

summary judgment, and the parties have fully briefed the issue whether the proposed amended complaint could raise a genuine issue of fact and have presented all relevant evidence in support of their positions." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). "When the proposed amended complaint is in response to an otherwise meritorious motion for summary judgment, . . . leave to amend may be denied as futile if 'the factual foundations of [the] new allegations are insufficient, as a matter of law, to withstand the motion for summary judgment.'" *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 133 (D. Conn. 2016) (quoting *Milanese*, 244 F.3d at 110), *aff'd,* 686 F. App'x 48 (2d Cir. 2017). By contrast, and as noted above, where "a cross-motion for leave to file an amended [pleading] is made in response to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim." *Milanese*, 244 F.3d at 110; *see also Barrett v. U.S. Banknote Corp.*, 806 F. Supp. 1094, 1098 (S.D.N.Y. 1992) ("Leave to amend a pleading should be granted if the movant 'has at least colorable grounds for relief,' absent any undue delay, bad faith, or undue prejudice to the opposing party." (quoting *Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979))).

Accordingly, to the extent Plaintiff argues that Defendant has failed to provide sufficient evidence of compliance with the Dispute Resolution clause, that argument does not justify denying leave to amend at this stage of the litigation. *See Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 416 (S.D.N.Y. 2008) ("[E]ven under the . . . standard set forth in *Twombly*, [the claimant] need only establish a basis to 'raise a

right to relief above the speculative level'; it need not prove the truth of its claim at this stage." (quoting *Twombly*, 550 U.S. at 555)).

Furthermore, Plaintiff has failed to articulate how it would be prejudiced if this Court granted Defendant leave to amend its counterclaims. Notably, Plaintiff concedes that Defendant's second counterclaim is a compulsory counterclaim for purposes of Rule 13(a) of the Federal Rules of Civil Procedure. (Dkt. 21 at 6 n.2). In addition, Plaintiff's Complaint and Defendant's first counterclaim involve the Agreement. (*See* Dkt. 1 at 2-5; Dkt. 8 at 4-5). It is well-established in this Circuit that a counterclaim is considered to be compulsory where it arises out of the same contract as that at issue in the complaint. *See, e.g.*, *Skyline Steel, LLC v. Pilepro, LLC*, No. 13-CV-8171 (JMF), 2015 WL 999981, at *5 (S.D.N.Y. Mar. 5, 2015) ("Courts have consistently found that counterclaims based on a contract are compulsory in actions relating to the same contract."); *SMS Mktg. & Telecomms., Inc. v. H.G. Telecom, Inc.*, 949 F. Supp. 134, 140 (E.D.N.Y. 1996) ("There is a logical relationship between the suit filed by LINQ for payments due on the contract, and the suit filed by SMS which alleges, in essence, breach of the same contract."); *Quick Container Servs., Inc. v. Interpool Ltd.*, 115 F.R.D. 59, 61 (S.D.N.Y. 1987) ("Where one party brings an initial suit for breach of contract, such as Interpool's Houston action, an adverse party may not file a subsequent action based on the same contract, unless this action was pleaded as a counterclaim in the initial suit."); *Hercules Inc. v. Dynamic Exp. Corp.*, 71 F.R.D. 101, 109 n.10 (S.D.N.Y. 1976) ("Numerous courts have found counterclaims arising out of the same contract as the plaintiffs' claim to be compulsory."); *see also* 6 Wright & Miller, Fed. Prac. & Proc. § 1410.1, at 70 (3d ed. 2010) ("When the same contract

serves as the basis for both the claims and the counterclaims, the logical-relationship standard also has been satisfied. . . ."). Accordingly, any prejudice resulting to Plaintiff by permitting Defendant to properly plead its counterclaims would be minimal. *See Roessner v. Emp. Term Life*, 589 F. Supp. 2d 174, 177 (D. Conn. 2008) ("Given that the new allegations here stem from the same underlying facts, are related to [the p]laintiff's original claim, and would not require [the d]efendants to 'expend significant additional resources' or 'significantly delay the resolution of the dispute,' [the d]efendants have not demonstrated that they would be sufficiently prejudiced to justify denying [the p]laintiff her requested leave to amend."); *see generally Feitshans v. Kahn*, No. 06 Civ. 2125 (SAS), 2007 WL 998400, at *2 (S.D.N.Y. Apr. 2, 2007) ("Courts should be particularly liberal in granting leave to add compulsory counterclaims because parties cannot assert compulsory counterclaims once a final judgment has been rendered.").

Plaintiff's motion also fails to provide any reason for this Court to conclude that there has been any "undue delay" in Defendant's assertion of the amended counterclaims. Defendant sought to amend its counterclaims only after attempting to resolve its dispute with Plaintiff's personnel for several months. (Dkt. 25 at 5-10).

While Plaintiff does not couch its arguments in such terms, the Court construes Plaintiff's opposition, which challenges Defendant's compliance with the Dispute Resolution clause, as raising an issue of "futility." "In assessing the futility of a proposed amended pleading, the factual allegations set forth in the proposed amended pleading are assumed to be true." *Dunham v. City of New York*, 295 F. Supp. 3d 319, 326 (S.D.N.Y. 2018). "It is axiomatic that the party opposing an amendment has the burden of

establishing that leave to amend would be futile." *Hines v. City of Albany*, 542 F. Supp. 2d 218, 224 (N.D.N.Y. 2008). "Proposed amendments are futile if they 'would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund*, 783 F.3d at 389 (quoting *Panther Partners Inc.*, 681 F.3d at 119).

Although Plaintiff attacks the factual predicate underlying Defendant's new allegations, Plaintiff fails to demonstrate how these new contentions do not cure the prior deficiencies in Defendant's counterclaims. *See O'Rourke v. Pitney Bowes, Inc.*, No. 95 CIV 10288 (DLC), 1996 WL 539848, at *2 (S.D.N.Y. Sept. 23, 1996) (rejecting the argument that "there is no factual basis for the claim and that leave to amend should therefore be denied" because such an argument "may provide the basis for a summary judgment motion at a later date" but it does "not establish that [the] plaintiff's claim . . . would be unable to withstand a motion to dismiss"). Indeed, the *only* insufficiency raised by Plaintiff's motion to dismiss is Defendant's purported failure to allege compliance with the Dispute Resolution clause. (Dkt. 12-1 at 6-9). Nevertheless, taking Defendant's proposed allegations as true and reading the counterclaims as a whole, *Panther Partners Inc.*, 681 F.3d at 119, Plaintiff's arguments are insufficient to defeat Defendant's motion for leave to amend.

Additionally, to the extent Plaintiff argues that Defendant has attempted to procure a "tactical advantage" through its assertion of counterclaims absent compliance with the Dispute Resolution clause (Dkt. 29 at 4-5), the Court construes this argument as suggesting that Defendant has acted in bad faith by seeking leave to amend its counterclaims. While

the Court need not opine upon Defendant's contention that the Dispute Resolution clause is unenforceable due to indefiniteness in order to resolve the parties' respective motions, the open-ended nature of this provision appears to be ambiguous. Plaintiff's reliance upon *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112 (2d Cir. 2011) to support a contrary conclusion is misplaced.

To be sure, the Second Circuit has instructed that a contractual requirement is not ambiguous simply because it "can be satisfied in more than one way." *Id.* at 121. In *10 Ellicott Square Court*, the Second Circuit noted that the contract was not indefinite or ambiguous because there was more than one way under New York law for the contract to be "executed." *Id.* at 121. Those circumstances are distinguishable from the instant language, which leaves wholly undefined what individuals or categories of business personnel constitute the "appropriate level of management," the parties' "authorized representatives . . . at the next level of management not directly involved in the dispute," or the parties' "designated senior business executives." (*See* Dkt. 12-3 at 9). Insofar as Defendant has asserted "substantial good faith" compliance with the Dispute Resolution clause (Dkt. 25 at 5-10), the Court fails to see how Defendant has acted in bad faith by seeking to amend its counterclaims after attempting for months to comply with an arguably ambiguous contractual term. *See generally Dervan v. Gordian Grp. LLC*, No. 16-CV-1694 (AJN), 2017 WL 4838318, at *4 (S.D.N.Y. Oct. 23, 2017) ("[O]n a motion to dismiss a breach of contract claim, we should resolve any contractual ambiguities in favor of the [claimant]." (quoting *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 86 (2d Cir. 2015))).

Lastly, Plaintiff argues that Defendant failed to demonstrate its compliance with the Dispute Resolution clause as it pertains to the jurisdictional/venue issues alleged in Defendant's second counterclaim. (Dkt. 29 at 2). The Court notes that Scheuerman appears to have raised these issues with Waites on at least one occasion. (*See* Dkt. 18-2 at 3 ("[W]e intend to pursue a breach of contract counter-claim based on a failure of [Plaintiff] to order products that were forecasted under the terms of the agreement as well as for the costs [that] were incurred in responding to that case that, in our view, should never have been filed against us in Texas[.]"); *see also* Dkt. 18-3 at 2 ("reiterat[ing Defendant's] . . . position as to why [Defendant] do[es] not have an obligation to indemnify [Plaintiff] with respect to the [Texas Action]."))). In any event, Defendant need not prove the veracity of its new allegation that it has complied with all necessary preconditions to asserting its second counterclaim at this stage of the proceedings; rather, it "need only establish a basis to 'raise a right to relief above the speculative level.'" *Bridgeport Music, Inc.*, 248 F.R.D. at 416 (quoting *Twombly*, 550 U.S. at 555)). In the exercise of its discretion, giving due consideration to Rule 15's liberal standard, the Court grants Defendant's motion for leave to amend as it pertains to all of Defendant's counterclaims.

In sum, Plaintiff has failed to set forth a "good reason" to deny Defendant's motion for leave to amend/correct its counterclaims, and thus, Defendant's motion is granted.

## CONCLUSION

For the foregoing reasons, Defendant's (Dkt. 25) motion for leave to amend/correct its counterclaims is granted, Plaintiff's (Dkt. 12) motion to dismiss the counterclaims is

denied, and Defendant's (Dkt. 18) cross-motion to stay the resolution of Plaintiff's motion

to dismiss is denied as moot.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

DATED:      October 31, 2018
            Rochester, New York